[No. 2863. July 23, 1927.]

[Rehearing Denied Feb. 5, 1930.]

RAPP et al. v. BOARD OF EDUCATION OF CITY OF LAS VEGAS.

[284 Pac. 761.]

C. J. Roberts, of Santa Fe, and C. F. Cornell, of Dallas, Tex., for appellants.

Hunker & Noble and Ward & Devries, all of East Las Vegas, for appellee.

## OPINION OF THE COURT

PARKER, C. J. ██ Plaintiff, as surviving partner (appellant), brought an action to recover for services as an architect rendered to the defendant. The defendant had available to construct a building the proceeds of a bond issue of $100,000, of which plaintiff was advised when he prepared the preliminary sketches and studies for the proposed school building. The defendant appointed a committee of three of its members "to secure plans, site, and all necessary preliminary work for the new school building, and give report at the next meeting." This committee reported to the board on April 5, 1920, that they had "employed the firm of Rapp & Rapp as architects, and had decided to follow Mr. Rapp's plan of building on the present site of the Castle school. The report was properly accepted by a motion, which was seconded and carried unanimously."

The first arrangement between the committee and the plaintiff was verbal, but subsequently two letters passed between plaintiff and one Clarence Iden, chairman of the defendant board, and chairman of the committee appointed to employ architects. The first letter is dated March 1, 1920, and was addressed by the plaintiff to the said Mr. Iden, in which he says:

"Confirming our telephone conversation today regarding the matter of charges for architectural services, will state that rather than to have any embarassment to your committee, we will be very glad to make a personal donation to your school of 1 per cent. of the cost of the work. This money to be used as the board may see fit, preferably for gymnasium equipment. This amount to be deducted from the 6 per cent. architectural commission agreed with your board."

The next letter was from Mr. Iden, dated March 4, 1920, and is as follows:

"Your favor of the 1st received. You may rest assured that I appreciate very much your generosity in connection with your proposition in regard to your personal donation for the benefit of the school of 1 per cent. of the cost of your work."

These letters were before the board at the meeting of April 5, 1920, at which time there was nothing before the board in the way of plans or sketches, except preliminary sketches and studies by the architect. The court below found that the plaintiff had knowledge of the fact that the expenditures of the defendant for the proposed school building must necessarily be limited to the proceeds to be derived from the sale of said bonds, and that at the time said preliminary sketches were submitted, the plaintiff was informed and knew that said plans must include a gymnasium and auditorium. The court also found that both preliminary plans and one of the completed plans submitted by the plaintiff included a gymnasium and auditorium. About the last of April, 1920, detailed plans and specifications were submitted by the plaintiff to the defendant board. In the specifications there were submitted three alternative plans. The first was in accordance with the preliminary sketches and studies, and included the auditorium and gymnasium. The second omitted the auditorium, and the third omitted the entire auditorium and gymnasium wing. The two latter alternative plans were not in accordance with the preliminary studies, nor in accordance with any directions of the defendant board. However, the board advertised for bids on each of the three alternative plans, resulting in a bid amounting to more than $135,000 on the building, including the auditorium and gymnasium, and not including either the architect's charges or the cost of purchasing additional land, which was necessary upon which to construct the building, and a bid amounting to $92,406.95 under the lowest bid for the third alternative plan, omitting the auditorium and gymnasium.

In this connection it is to be observed that the correspondence above set out could not refer to any alternative proposition, there being no such thing at the time the let-

ters were written, nor at the time the board met on April 5, 1920, and ratified the action of the committee. The board never authorized the plaintiff by any official action, so far as is disclosed by the record, to propose alternative plans omitting the auditorium and gymnasium. The plaintiff's situation, therefore, cannot be aided in any way by the letters above mentioned. There is no writing of any kind shown in the record whereby the plaintiff was employed to prepare plans and specifications for anything other than a school building containing the auditorium and gymnasium. The plaintiff's action in submitting alternative bids was purely voluntary on his part, without authority of the defendant, and the fact that the board received the alternative plans and submitted them to contracts for bids would not in any way create a contract in writing between the plaintiff and the board as required by the statute.

By section 4893, Code 1915, it is provided:

"No expenditure involving an amount greater than $200.00, shall be made except in accordance with the provisions of a written contract. * * *"

Assuming, as we do, that a contract might be made out by two or more separate writings in this kind of a case, as well as in the ordinary case between individuals, it still remains a fact that there is no writing of any kind expressing the terms of any contract for plans and specifications for a building omitting the auditorium and gymnasium. The fact that the plans and specifications calling for the building with the auditorium and gymnasium would cost more than $135,000 would seem to preclude plaintiff from recovery in this case under the well-recognized rule that an architect must prepare plans of a building which may be constructed within the agreed sum, or otherwise he has no right to recovery.

 Counsel for plaintiff insists that the court erred in permitting an amendment to the defendant's answer, setting up the defense that the contract was not in writing, upon the ground that, after the case has been tried and submitted to the court, the court has no power to allow an amendment which introduces a new issue between the

parties. This doctrine would seem to be inapplicable in this case. The fact that the contract was not in writing was thoroughly developed in the trial, and the amendment did not introduce a new issue, notwithstanding the defendant was permitted to put on evidence in support of the allegation in the amended answer.

It follows from all of the foregoing that the judgment of the district court in denying the relief sought by the plaintiff is correct, and should be affirmed; and it is so ordered.

BICKLEY and WATSON, JJ., concur.